UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                    **CENTRAL DIVISION at LEXINGTON**

UNITED STATES OF AMERICA,           )
                                    )
    Plaintiff,                      )
                                    )         Criminal Case No.
v.                                  )         15-cr-55-JMH-REW-1
                                    )
ZACHARY DANIEL TRUE,                )
                                    )
    Defendant.                      )    **MEMORANDUM OPINION & ORDER**
                                    )

                                   ***

This matter is before the Court upon Defendant's Motion to Suppress [DE 18]. The United States has filed a Response [DE 20], stating its objections, and Defendant has filed a Reply in further support of his Motion [DE 21]. The Court has also had the benefit of evidence presented during a hearing on January 4, 2016 [*See* DE 22, 23]. Defendant seeks the suppression of evidence obtained from the search of the contents of his cell phone seized from his home on or about April 7 or 8, 2015, on the grounds that the seizure of the phone was made without a warrant in violation of the Fourth Amendment to the United States Constitution and in the absence of any exception to the warrant requirement. This motion is now ripe for decision, and, for the reasons set forth below, the relief requested will be denied.

                                   **I.**

At approximately 11:22 p.m. on the evening of April 7, 2015, in Frederick County, Maryland, deputies from the Sherriff's Office were dispatched to the home of Defendant True and Kimberly True, his wife, concerning a report of domestic violence. There, the deputies learned that Mrs. True had seen "conversations" that her husband, the defendant, was having with underage girls on his "smart" phone, so she took it from him while he was showering. They argued, and she locked herself in a bedroom. Defendant broke through the door and began to strangle his wife. Their twelve-year-old daughter leaped onto him to stop the attack. A call for emergency assistance was made and, at some point, Defendant left the home. Once deputies arrived, Mrs. True asked them to take the phone and stop Defendant True from talking to these young girls. She advised Deputy Lorusso that the phone was data use only and belonged to her husband but that she paid for it. Around 1:00 a.m., now on April 8, 2015, Corporal Riffe contacted Detective Kelly because officers on the scene had concerns that Defendant True's phone, found on the scene, contained evidence of inappropriate communications with minors and images of child pornography.

Kelly arrived at the Sheriff's Office just before 8:00 a.m. on April 8, 2015. At that time, Sergeant Byers related to her that True had been in the lobby trying to get his phone back but that he had left before 7:00 a.m. when investigators started to

arrive at the office. Concerned about the safety of Kimberly True and the Trues' five children, ages 3 to 15, Kelly contacted Mrs. True via telephone where she learned that Mrs. True had seen pictures of a girl on the phone in which she revealed her breasts and her genital area while in panties. Kelly gained permission to interview the Trues' five children, ages 3 to 15. A social worker, Sammy Jo Kaneukuni, was assigned to the matter. During those interviews, Kelly learned that the children had seen a variety of images on the phones, including the twelve-year-old daughter who had seen a photo of her father's penis, which she deleted so that he could not send it to anyone. She had also seen images that he received from young girls in various stages of undress. The children also told investigators that they had seen him chatting on-line with girls, who appeared to be underage, and the oldest child, a son, was able to provide the name of a girl in Kentucky with whom his father had been in contact. Through interviews with the children and other family members, Kelly learned, as well, that an eight-year-old son had used his paternal grandmother's computer to look at pornographic materials on websites that his father visited. Kelly testified that she was confident that she had probable cause to believe that Defendant had committed solicitation of a minor, no later than April 9, 2015, when she interviewed the Trues' twelve-year-

old daughter and learned about the images exchanged between True and an unknown girl.

Meanwhile, on April 12, 2015, around 6:25 p.m., Officer Angeline Bouchard, a police officer in Bourbon County, Kentucky, responded to a call concerning a suspicious individual hiding behind a dumpster in an apartment complex parking lot and then fleeing.  She eventually learned that residents of the apartment had encountered him attempting to give a young boy a dollar in exchange for knocking on the door of an apartment to advise a resident, S., a young female, under the age of 18, that he was there and wished for her to come out and meet him.  Further questioning revealed that S. had been in contact with him, chatting on a website for some time, and that she had sent him photographs of herself of a sexual nature.  He had last texted her from his phone, which was the same one held by Frederick County Sherriff's Office, on April 7.  He had sent S. a message on April 10, using a different number to let her know that he was in Paris.  She told him that he could meet her at her church, and he appeared on April 11, in Lexington, Kentucky, at her church, where lunch was being served to the homeless.  There, he told her that he had "hopped a train" and hitchhiked to see her.  S.'s grandfather and the pastor at her church, unaware of the connection between the two, were alarmed by his attention to S. and urged True to leave town.  True appeared at

her church again on April 12 and sat in the pew behind her during a worship service. When True gave her a slip of paper with a phone number on it, her grandfather intercepted it and threw it away. The church's pastor again urged him to leave town and took him to the local bus depot in an effort to encourage him to leave. Later that day, True was discovered behind the dumpster at the apartment complex where S. lived.

On April 14, 2015, Frederick County law enforcement officials were informed that Defendant had returned and that his mother, Joanna True, had taken him to a hospital for a mental evaluation. He was arrested and taken into custody upon his release from the medical facility on April 15, 2015. A warrant for Defendant's phone and the contents of Defendant's phone was sought and received on April 16, 2015.

## II.

In his Motion to Suppress, True does not object to the presence of deputies in his home or even to their discovery of his telephone. He objects to their seizure of his phone and, by extension, their subsequent search of the contents of that phone. The evidence shows that it was his wife, Kimberly True, who took the phone from Defendant True and that she did so of her own accord, not at the request of law enforcement. She advised the deputies who came to the True home that she had seen "conversations" with and that the True children had seen

Defendant Skyping with underage girls on the phone, so she took it from where he left it while he was showering. She further advised the deputies that she was assaulted, i.e., strangled, during the couple's ensuing argument over the phone. By the time the deputies arrived, Defendant True had left the home. Mrs. True still had the phone in her possession and, in Defendant's absence, asked the deputies to take the telephone and stop her husband from talking to these young girls.

True suggests that deputies had a constitutional obligation, in that moment, to either leave the phone with his wife, seek him out to ask permission to seize the phone, or seek a warrant because the phone was his and not hers. The law does not require any of these alternatives on the facts presented to the Court. First, the deputies had not secured a warrant, but they were lawfully present in the True home at the invitation of Mrs. True to investigate an alleged assault. No one disputes that she had common authority over the premises and, in the absence of any in-the-moment objection by her co-tenant, Defendant True, the consent obtained by deputies to enter the home was valid. *See United States v. Johnson*, 22 F.3d 674, 677-78 (6th Cir. 1994) (quoting *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S.Ct. 2793, 2797, 111 L.Ed.2d 148 (1990)) (holding that Fourth Amendment prohibition on warrantless entry for arrest or search does not apply when "voluntary consent has been obtained

. . . from a third party who possesses common authority over the premises.")

Defendant True argues, however, that she did not have common authority over the smart phone itself and, thus, the third party consent exception does not extend to the seizure of his phone by the deputies. However, the doctrine of plain view and the third party consent exception apply together and permitted the evidence to be seized despite the lack of warrant. The doctrine of plain view applies so long as the officer was lawfully on the premises where the evidence was found, the evidence was discovered inadvertently, the incriminating nature of the evidence was immediately apparent to the officer, and the item was actually in plain view in a location to which the officer had a lawful right of access. *United States v. Stuckey*, 325 F. Supp. 2d 793, 808 (E.D. Mich. 2004) aff'd, 253 F. App'x 468 (6th Cir. 2007) (citing *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038; *McLevain,* 310 F.3d at 439; *United States v. Blakeney,* 942 F.2d 1001, 1028 (6th Cir. 1991)).

Mrs. True identified the phone as the one involved in the dispute and altercation with her husband, including the alleged assault which prompted her call for help. She offered it to the investigating officers asking them to stop Defendant from communicating with underage girls. There is no evidence that the officers looked for any evidence, let alone the phone, or

even requested that she provide the phone to them. Thus, the phone was necessarily discovered inadvertently and placed in plain view of the officers by Mrs. True, all within a space where they had a lawful right of access by virtue of her invitation. Finally, the incriminating nature of the evidence was immediately apparent to Deputy LoRusso. Mrs. True represented that it was the phone over which the couple had fought, which precipitated both his attack and her call for help. Thus, at the very least it was evidence relevant to the alleged assault of Mrs. True by Mr. True, for which charges were brought and an arrest warrant obtained on April 8, 2015. Further, no later than the day of April 8, 2015, by which time Defendant had disappeared before Deputy Kelly arrived at work, had reasonable suspicion that the phone contained evidence of at least the solicitation of a minor at the time it was seized.[1]

---

[1] For that matter, it occurs to the Court that exigent circumstances might have justified the initial seizure to secure the phone and prevent the destruction of evidence contained on the phone pending the issuance of a warrant as permitted under *Schmerber v. California*, 384 U.S. 757, 770-71 (1966). The situation in the True home presented more than the mere possibility of loss or destruction of evidence; rather, the phone was located in Defendant's home to which he had a right of reentry in the absence of a protective order on the night in question, notwithstanding his representation to the deputies who later located him that he would not return that night. Further, True had already shown a willingness to break down a door and strangle his wife in the presence of his children in order to recover the phone and its contents. Whether deputies believed that it constituted evidence relevant to the alleged assault, solicitation of a minor, or, eventually, child pornography at

Defendant argues that, once he appeared to law enforcement and asked for his phone back, any third party consent became void, and that the law enforcement agents' failure to timely obtain a warrant rendered the seizure unreasonable in keeping with *United States v. Place*, 462 U.S. 696 (1983) (holding that a 90 minute detention of personal property without additional investigation or probable cause is too lengthy under *Terry v. Ohio*, 392 U.S. 1, 20 (1968), and requires suppression of any evidence discovered as a result of the seizure). The Court is not persuaded that *Place* is applicable in the context of the facts before the Court as Defendant True's proximity to and availability to object to the seizure or to then retrieve the phone was limited – first by his decision to leave his home after the alleged assault and then by his decision to leave the Sherriff's office to travel to Kentucky.

As articulated above, the seizure of the phone was legitimate from the start. Further, while law enforcement officers in Maryland might have moved more quickly to obtain a warrant in the period between April 8 and April 15, Defendant gave them no reason to do so and, frankly, his absence provided them with an opportunity to complete a more thorough investigation of his alleged solicitation of underage girls and

---

the time it was seized, there was a real possibility that Defendant would return home and take the phone to secret the evidence that it either represented or contained.

his alleged receipt of pornographic images of children. While he made demands for the return of his phone when he appeared in the lobby of the sheriff's office in the pre-dawn hours of April 8, 2015, but he did not take the necessary steps to obtain its return, assuming that it would have been possible. Plaintiff presented evidence through the testimony of Deputy Kelly that only she could have released the phone to Defendant, since she had requested it seized pending a request for a search warrant, and no one disputes that Defendant had disappeared from the sheriff's office sometime prior to 7:00 a.m., before investigators began to arrive, and certainly before Deputy Kelly came into work just before 8:00 a.m. that morning. The Court gives little countenance to Defendant's self-serving testimony that he left the sheriff's office only after he was advised and, he intimates, misled by a sheriff's office employee to believe that the phone was already subject to a search warrant. After that, he was nowhere to be found until his return to Maryland and his hospitalization on April 14, at which time he did not renew his demand for the return of his phone. Even if the Sherriff's Office had sought to return the phone, it would have been impossible to do so with Defendant's disappearance.

### III.

For all of the reasons stated above and without reaching a conclusion with respect to the government's argument concerning

inevitable discovery of the evidence contained on the phone, the Court concludes that Defendant's request for relief is without merit.

Accordingly, Defendant's Motion to Suppress [DE 18] is **DENIED**.

This the 11th day of January, 2016.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge